UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MAS WHOLESALE HOLDINGS LLC,

                Plaintiff,

     - against -                        **MEMORANDUM & ORDER**
                                         19-CV-1294 (PKC) (VMS)
NW ROSEDALE INC., NW CO OP CITY
INC. a/k/a NW OF CO OP CITY LLC, A&A
WHOLESALE HOLDINGS LLC,
MAHAMMAD ASHRAF, and AJAY SARIN,

                Defendants.
------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Before the Court is the motion by Defendants NW Rosedale, Inc., NW Co op City Inc., A&A Wholesale Holdings LLC, Mahammad Ashraf, and Ajay Sarin, asking the Court to reconsider its award of $17,500.38 in attorneys' fees and costs to Plaintiff MAS Wholesale Holdings LLC, as well as graduated fines for Defendants' noncompliance with the Court's May 14, 2021 contempt order (the "Contempt Order"). For the reasons below, the Court denies Defendants' motion.

## BACKGROUND

       On May 14, 2021, the Court found Defendants in contempt for failing to abide by a consent decree (the "Consent Decree") that they had executed with Plaintiff, and which the Court had entered on April 14, 2020. (*See generally* Contempt Order, Dkt. 60; Consent Decree, Dkt. 42.) The Consent Decree provides that "Defendants shall compensate Plaintiff for all attorneys' fees Plaintiff may incur in enforcing [the Consent] Decree, the Settlement Agreement, and their terms." (Consent Decree, Dkt. 42, at ECF[1] 4.) In a letter clarifying the relief it was seeking for Defendants'

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

1

contempt, Plaintiff submitted an affidavit from counsel with detailed billing information, representing that Plaintiff had accrued $23,187.88 in attorneys' fees and costs in pursuing enforcement.  (*See* Dkt. 57-1, ¶ 18.)  That figure represents approximately 65 hours of work by Plaintiff's attorney, Kyle Seiss, charged at an hourly rate of $350, for a total of $22,750, along with $437.88 in transcript fees for a hearing on March 9, 2021.  (*Id.* ¶¶ 10, 13, 15–16; *see also* Dkt. 57-2.)

The Court found that Defendants should not be held responsible for the full amount of attorneys' fees Plaintiff accrued because the time Plaintiff's counsel spent seeking contempt for Defendants' use of the terms "NW" and "Nationwide" was not time spent "enforcing [the Consent] Decree, the Settlement Agreement, and their terms." (Contempt Order, Dkt. 60, at 21–22 (quoting Consent Decree, Dkt. 42, at ECF 4).)  The Court estimated that work on those elements corresponded to roughly one quarter of Plaintiff's counsel's total billing.  As a result, the Court reduced the amount of attorneys' fees to $17,062.50, for an award of $17,500.38 overall.  (*Id.*)  In the Contempt Order, the Court also "direct[ed] Defendants to pay the following graduated fees to the Clerk of Court: a $100 per day fine during the first 14 days after" service of the Contempt Order; "a $200 per day fine beginning on day 15; and a $400 per day fine beginning on day 31 and continuing until Defendants [had] complied fully with the Consent Decree and with the terms of [the Contempt Order]."  (*Id.* at 23.)  The purpose of the graduated fines was to "ensur[e]" Defendants' compliance with the Contempt Order, including payment of the attorneys' fees and costs assessed and imposed therein.  (*See id*. at 20 ("[T]he Court believes that a monetary penalty will be the most effective tool in ensuring Defendants' hitherto elusive compliance with the Court's orders.  Accordingly, the Court uses its 'broad discretion,' *Paramedics* [*Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 658 (2d Cir. 2004)], to implement

'a modest but increasing daily coercive fine' upon Defendants, *Scalia v. Cty. Serv. Transportation Inc.*, No. 20-MC-32 (LJV) (JJM), 2021 WL 776981, at *2 (W.D.N.Y. Mar. 1, 2021).").)

On June 7, 2021, almost a month after the Court entered the Contempt Order, and during which time Defendants paid neither the required attorneys' fees nor the graduated fines, defense counsel Sergei Orel filed a "Declaration [regarding the Court's] Order on Motion for Contempt," in which he asserted that the Court's "ordered attorneys [sic] fees of $17,500.38 are entirely excessive and Defendants disagree with such ruling by Your Honor." (*See* Dkt. 63.) On June 26, 2021, the Court held a hearing and "noted that, to date, Defendants ha[d] failed to comply with the [Contempt Order]." (6/15/2021 Minute Entry.) Nevertheless, the Court granted Defendants until June 29, 2021 to file a motion for reconsideration of the attorneys' fees award. It also "instructed Defendants to include in that motion any argument as to whether the graduated fees for noncompliance, outlined in the [Contempt Order], should apply during the time period between the 5/14/2021 [Contempt Order] and the 6/15/2021 hearing." (*Id.*) Now before the Court is Defendants' motion for reconsideration.

## LEGAL STANDARD

"A motion for reconsideration is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* (citation and quotations omitted). "The burden of proof is on the party seeking relief from judgment[.]" *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (alteration in original) (citation and quotations omitted).

"A motion for reconsideration is appropriate where the court has overlooked controlling decisions or factual matters *that were put before it on the underlying motion*." *Townsend v. Benjamin Enters., Inc.*, No. 05-CV-9378 (GAY), 2009 WL 3722716, at *1 (S.D.N.Y. Nov. 6, 2009) (emphasis in original) (citation, quotations, and alterations omitted), *aff'd*, 679 F.3d 41 (2d Cir. 2012). Courts have denied motions to reconsider attorneys' fees awards that identify no controlling decisions or data that were overlooked in the underlying motion. *See, e.g.*, *Joint Stock Co. "Channel One Russia Worldwide" v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2020 WL 1480465, at *5 (S.D.N.Y. Mar. 26, 2020) (denying a motion to reconsider an attorneys' fees award because "[a]side from arguing that the amount of the sanctions award against [them was] 'not justifiable,'" the movants "point[ed] to no 'controlling decisions or data that the court overlooked'" and "never argue[d] that they met the strict standards justifying reconsideration" (citation omitted)).

## DISCUSSION

### I.  The Court Declines to Reconsider its Award of Attorneys' Fees

Defendants do not mention, let alone base their reconsideration motion on, any Federal Rule of Civil Procedure or local rule. Nor do they attempt to identify any "controlling decisions or factual matters *that were put before [the Court] on the underlying motion*" but that the Court overlooked. *See Townsend*, 2009 WL 3722716, at *1 (emphasis in original) (citation and quotations omitted).

Instead of "argu[ing] that they me[e]t the strict standards justifying reconsideration," Defendants essentially contend "that the amount of the sanctions award against [them was] 'not justifiable.'" *Infomir*, 2020 WL 1480465, at *5 (alteration in original) (citation omitted). They make three arguments in support of that claim.

4

First, Defendants argue that "[i]t would be an extreme injustice to Defendants if the Plaintiff were allowed to benefit from the award of attorneys [sic] fees," because "Plaintiff is abusing the judicial process." (Defendants' Motion for Reconsideration ("Def. Mot."), Dkt. 70, at 2.) Defendants point to Plaintiff's assertion that he "passes by Defendants['] store" to determine whether Defendants have complied with the Consent Decree and Contempt Order. (*Id.*) Defendants contend that "[i]f the Plaintiff were interested in Defendants' speedier rebranding, he would have been well advised to reach out to the Defendants to solve the issue outside of court, instead of abusing the judicial process and the court's resources." (*Id.*)

This argument has nothing to do with the May 14, 2021 award of attorneys' fees. The Contempt Order awarded Plaintiff's counsel the fees and costs counsel incurred while enforcing the Consent Decree throughout the underlying litigation. Whether Plaintiff "would have been well advised to reach out to the Defendants," *after* the Contempt Order awarding fees, is irrelevant to whether those fees were reasonable.

And even if Defendants' argument were on topic, it defies logic. Plaintiff sued Defendants for contempt and won. The burden then fell to Defendants to comply with the Court's Contempt Order. The Court did not direct Plaintiff to "reach out to the Defendants" if "interested in Defendants' speedier" compliance; it directed Defendants to comply. That Plaintiff did not "reach out to the Defendants to solve the issue outside of court," after the Court had ordered *Defendants* to solve the issue, is not a reason to reduce the award of attorneys' fees.[2]

---

[2] To the extent Defendants contend that Plaintiff should have "reach[ed] out to the Defendants to solve the issue outside of court" *before* filing their enforcement/contempt motion—aside from being irrelevant for the reasons discussed above—that contention is factually inaccurate. According to Plaintiff, its counsel *did* contact Defendants about their non-compliance before filing the enforcement/contempt motion, yet Defendants failed to comply. (Declaration of Noah Rosen, Dkt. 44-1, ¶¶ 29–34.)

Second, Defendants argue that they "have rebranded as of February 25, 2021 and that Plain[t]iff's motion for contempt in that respect was moot." (Def. Mot., Dkt. 70, at 2.) But the Court already rejected this argument when it found that Defendants were not in compliance with the Consent Decree (*see* Contempt Order, Dkt. 60, at 11–12), and Defendants point to no "controlling decisions or data that the court overlooked," *Van Buskirk*, 935 F.3d at 54 (quotations omitted). Further, Defendants admit in their motion for reconsideration that it was not until "*June 16, 2021*, [that] Defendants did the last bit of rebranding as ordered by the Court." (Def. Mot., Dkt. 70, at 2 (emphasis added).) And even if Defendants had fully rebranded by February 25, 2021, they do not explain why this should affect the award of attorneys' fees.[3]

Third, Defendants argue that the Court should reduce its award because "Plaintiff's motion for contempt was not a complicated motion, and it should . . . have taken the Plaintiff's lawyer . . . 20-30 hours at the most." (Def. Mot. at 2.) But Defendants did not raise this issue "*before [the Court] on the underlying motion*." *See Townsend*, 2009 WL 3722716, at *1 (emphasis in original) (citation and quotations omitted). Nor do Defendants point to any evidence of why the motion was "not [] complicated," why 20–30 hours would have been an appropriate amount of time to spend, or any "evidence or binding authority" the Court "failed to consider." *Van Buskirk*, 935 F.3d at 54.[4]

---

[3] Defendants also reiterate their argument that they could not rebrand sooner because of the COVID-19 pandemic. (*See* Def. Mot., Dkt. 70, at 1–2.) But the Court already rejected this argument, and Defendants offer no reason to reconsider. (*See* Contempt Order, Dkt. 60, at 11–12 (noting that "Defendants [did] not address why they failed to simply take down the old signs that violated the Consent Decree, or at least petition the Court for an extension of time to do so," and that "the parties submitted the draft Consent Decree to the Court on April 13, 2020, almost a month into the COVID-19 lockdown . . . undercut[ting] Defendants' argument that COVID-19 threw a completely unexpected wrench into their plans for compliance with the Consent Decree").)

[4] Defendants also argue that "[a] rate of $350 for [Plaintiff's counsel] is not justified in the least" because Plaintiff's counsel, Attorney Seiss, is an associate, whereas defense counsel, Attorney Orel, "is an experienced practitioner with over 21 years of legal experience, including IP

6

**II.     Defendants Must Pay the Graduated Fines that Accrued Between May 14, 2021 and June 7, 2021, and Any Such Fines Accruing Hereafter**

Defendants contend "that the graduated fees should not apply, as the Defendants have now completely complied with the re-branding requirements, first as of February 25, 2021, and lately as of June 16, 2021." (Def. Mot., Dkt. 70, at 3.) But the Court directed Defendants to explain why the fines should not apply between May 14, 2021, when the Court found that Defendants were not in compliance with the Consent Decree, and June 15, 2021, when it found that "Defendants ha[d] failed to comply with the [Contempt Order]." (6/15/2021 Minute Entry.) As noted, the Contempt Order directed Defendants to, among other things, pay attorneys' fees. (Contempt Order, Dkt. 60,

---

litigation, [and his] hourly rate is only $300." (Def. Mot., Dkt. 70, at 2.) But even were the Court to consider this comparison, it would sorely undermine Defendants' cause. Attorney Orel's performance in this case has been abysmal and borderline sanctionable. Attorney Orel has not only failed to obtain the result his clients sought in this case, but also, unlike Attorney Seiss, has "personally failed to comply with Court directives and deadlines throughout this litigation." (6/30/2021 Docket Order.) On March 9, 2021, "the Court removed Attorney [Orel] from" a hearing "for erratic, disruptive, and disrespectful behavior" (3/9/2021 Minute Entry), including "[h]is use of ad hominem insults and rude sounds, among other things" (3/26/2021 Docket Order). On March 11, 2021, "the Court note[d] that Defendants' attorney, Sergei Orel, [did] not appear to be admitted in the Eastern District of New York, despite having filed [a] Notice of Appearance representing that he [was] 'admitted or otherwise authorized to practice' in this court," prompting the Court to order Attorney Orel to show cause why he should not be sanctioned. (3/11/2021 Docket Order.) After missing the deadline to respond, Attorney Orel filed a *pro hac vice* application, which the Court accepted, despite the fact that it did "not fully resolve his misrepresentation of [his admission status] at the time he entered his appearance." (*See* 3/26/2021, 4/27/2021, and 5/5/2021 Docket Orders; *see also* Motion to Appear Pro Hac Vice, Dkt. 59; 5/3/2021 Docket Order (granting *pro hac vice* motion).) More substantively, Attorney Orel waited almost a month after the Contempt Order and award of attorneys' fees, during which time Defendants both failed to pay those fees and accrued graduated fines, to seek reconsideration of the fee award. (*See* Dkt. 63.) And even after being permitted to move for reconsideration, Attorney Orel failed to file the reconsideration motion or a required compliance update by the deadline, claiming that, for *one* of the two weeks the Court gave him to prepare the papers, he was busy "with another [case]." (Letter to the Court by Sergei Orel, Dkt. 67, at 1.) The day *after* the deadline, defense counsel sought an extension, in violation of the Court's Individual Practices and Rules. Finally, on July 1, 2021, defense counsel filed a compliance report and the motion for reconsideration that is now before the Court. As noted, the three-page motion for reconsideration cites no law whatsoever. In sum, Attorney Orel makes a poor comparator, and the Court rejects his argument that his own rate should inform the attorneys' fees calculation.

7

at 21–22.)  It also directed them to pay the specified graduated fines "until [they had] complied fully with the Consent Decree *and with the terms of* [*the Contempt Order*]."  (Contempt Order, Dkt. 60, at 23 (emphasis added)).)  By at least June 15, 2021, Defendants still had not paid the attorneys' fees required by the Contempt Order.  Defendants therefore failed to comply with that aspect of the Contempt Order and were required to pay the graduated fines.  That they *partially* complied with the Contempt Order by rebranding is insufficient.[5]

Given that Defendants indicated that they wished to move for reconsideration of the attorneys' fees award on June 7, 2021, however, the Court excludes from the graduated fines calculation the days between that date and the date of this Order.  Defendants are thus required to pay the graduated fines that accrued from May 15, 2021 through June 6, 2021 ($100 per day from May 15, 2021 through May 28, 2021, and $200 per day from May 29, 2021 through June 6, 2021)—for a total of $3,200—as well as any graduated fines that accrue after the date of this Order.  Because nine days have passed at the $200-per-day rate, the amount will increase to $400 per day seven days after the date of this Order, if Defendants still have not fully complied.

---

[5] Not to mention Defendants' June 15, 2021 admission that they failed to post the disclaimer the Contempt Order required.

8

## CONCLUSION

As Defendants have failed to meet the "strict" standard for granting a reconsideration motion, *Van Buskirk*, 935 F.3d at 54, their motion is denied. Defendants are directed to comply with the Consent Decree, the Contempt Order, and the terms of this Order immediately, including, by close of business on July 22, 2021, paying the Clerk of the Court the accrued graduated fines of $3,200.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 21, 2021
      Brooklyn, New York