UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
MAS WHOLESALE HOLDINGS LLC,

                    Plaintiff,

       - against -                       **MEMORANDUM & ORDER**
                                                         19-CV-1294 (PKC) (VMS)

NW ROSEDALE INC., NW CO OP CITY
INC. a/k/a NW OF CO OP CITY LLC, A&A
WHOLESALE HOLDINGS LLC,
MAHAMMAD ASHRAF, and AJAY SARIN,

                    Defendants.
---------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Before the Court is the "Motion to Alter Judgment" by defense counsel for Defendants NW Rosedale, Inc., NW Co op City Inc., A&A Wholesale Holdings LLC, Mahammad Ashraf, and Ajay Sarin.  The Court considers this *defense counsel's* motion, rather than Defendants' motion, because it is a response to the Court's August 15, 2021 order that defense counsel, Sergei Orel, "show cause why [he] should not be sanctioned $500 for failure to comply with yet another court order."  (8/15/2021 Docket Order.)  Before addressing the substance of defense counsel's motion and recent actions, a recitation of the history of this case—and the events that have already led the Court to describe Orel's performance as "abysmal and borderline sanctionable"—is warranted.  (*See* Order Denying Defendants' Motion for Reconsideration ("Reconsideration Order"), Dkt. 71, at 6–7 n.4.)

**BACKGROUND**

**I.**    **The Underlying Litigation**

       In 2018, NSC Wholesale Holdings, LLC ("NSC"), the parent company of National Wholesale Liquidators ("NWL"), a large regional chain of stores founded in 1984, filed for bankruptcy.  (Declaration of Noah Rosen in Support of Plaintiff's Motion for Contempt ("Rosen

1

Decl."), Dkt. 44-1, ¶¶ 3–5.)  At the bankruptcy auction, Plaintiff MAS Wholesale Holdings LLC purchased various assets of NSC, including two stores, and "[a]ll of the [d]ebtor's intellectual property." (*Id.* ¶ 8.)  Defendants purchased the leases for two former NSC stores.  (*Id.* ¶ 13.)

After the bankruptcy auction, however, Defendants continued to use signs and slogans associated with the NWL brand.  (*Id.* ¶¶ 18–28.)  In March 2019, Plaintiff filed this action, asserting violations of the Lanham Act, New York General Business Law, and New York common law, alleging, among other things, trademark infringement, deceptive practices, and unfair competition, and seeking damages and injunctive relief.  (*Id.* ¶ 34; *see also* Complaint, Dkt. 1.)

After several discovery disputes, the parties reported on April 7, 2020 that they had reached a settlement and executed a confidential settlement agreement (the "Settlement Agreement"). (Notice of Settlement, Dkt. 40.)  On April 13, 2020, the parties submitted a stipulation of dismissal with a proposed consent decree attached.  (Dkt. 41.)  The following day, the Court so-ordered the Consent Decree and dismissed the case.  (Consent Decree, Dkt. 42.)

The Consent Decree prohibits Defendants from using certain signs and slogans associated with the NWL brand.  (*See id.* at ECF[1] 2–3.)  It also provides that "Defendants shall compensate Plaintiff for all attorneys' fees Plaintiff may incur in enforcing [the Consent] Decree, the Settlement Agreement, and their terms." (*Id.* at ECF 4.)

## II. Defendants' Failure to Comply with the Consent Decree

On October 14, 2020, Plaintiff visited Defendants' stores and found signs that violated the terms of the Consent Decree.  (Rosen Decl., Dkt. 44-1, ¶¶ 41–43.)  On January 4, 2021, Plaintiff moved for contempt, seeking sanctions against Defendants as well as attorneys' fees.  (Plaintiff's Memorandum in Support of Motion for Contempt, Dkt. 44-32.)  On January 8, 2021, the Court

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

ordered Defendants to respond to the motion by January 15, 2021.  (1/8/2021 Docket Order.)  On January 15, 2021, Defendants requested a 30-day extension of time to respond (Dkt. 46), and the Court extended the deadline by two weeks, until January 29, 2021 (1/15/2021 Docket Order). Defendants failed to file their response by January 29, 2021.  This was defense counsel's and/or Defendants' first missed deadline in this case.

On February 1, 2021, Plaintiff moved for Defendants to be held in contempt for their failure to respond, and the Court entered an order finding the original contempt motion unopposed.  (*See* Dkt. 47; 2/1/2021 2:12 PM Docket Order.)  Later that day, Defendants filed a letter asking the Court not to treat the motion as unopposed, indicating that they had not yet filed their opposition because counsel for Defendants had been traveling internationally, but that Defendants intended to file their response later that day.  (Dkt. 48.)  The Court permitted Defendants to file their response (2/1/2021 3:01 PM Docket Order), which was filed that evening (Defendants' Opposition to Plaintiff's Motion for Contempt, Dkt. 51).

On March 9, 2021, the Court held a contempt hearing with the parties via videoconference. For over an hour during the hearing, Orel engaged in disruptive, disrespectful, and bizarre behavior directed at both the Court and Plaintiff.  (*See* 3/9/2021 Minute Entry.)  This included "[h]is use of ad hominem insults and rude sounds, among other things."  (3/26/2021 Docket Order.)  After multiple warnings to Orel to modify his behavior, as well as unsuccessful attempts to mute Orel, the Court ejected Orel from the contempt hearing proceedings.  (*See* 3/9/2021 Minute Entry.)

On March 11, 2021, the Court discovered "that Defendants' attorney, Sergei Orel, [did] not appear to be admitted in the Eastern District of New York, despite having filed [a] Notice of Appearance representing that he [was] 'admitted or otherwise authorized to practice' in this court," prompting the Court to order Orel to show cause why he should not be sanctioned.  (3/11/2021

3

Docket Order.)  Orel missed the deadline to show cause why he should not be sanctioned for this misrepresentation to the Court.  This was the second missed deadline by defense counsel and/or Defendants in this case.  After missing the deadline to respond, Orel filed a *pro hac vice* application, which the Court accepted, despite the fact that it did "not fully resolve his misrepresentation of [his admission status] at the time he entered his appearance in this matter." (*See* 3/26/2021, 4/27/2021, and 5/5/2021 Docket Orders; *see also* Motion to Appear Pro Hac Vice, Dkt. 59; 5/3/2021 Docket Order (granting *pro hac vice* motion).)

On May 14, 2021, the Court found Defendants in contempt for failing to abide by the Consent Decree.  (*See* Contempt Order, Dkt. 60.)  In a letter clarifying the relief it was seeking for Defendants' contempt, Plaintiff submitted an affidavit from Plaintiff's counsel with detailed billing information, representing that Plaintiff had accrued $23,187.88 in attorneys' fees and costs in pursuing enforcement, for which it sought reimbursement from Defendants.  (*See* Dkt. 57-1, ¶ 18.)  The Court found that Defendants should not be held responsible for the full amount of attorneys' fees Plaintiff had accrued, and reduced the amount of attorneys' fees and costs to $17,500.38.  (Contempt Order, Dkt. 60, at 22.)  In the Contempt Order, the Court also "direct[ed] Defendants to pay the following graduated fees to the Clerk of Court: a $100 per day fine during the first 14 days after" service of the Contempt Order; "a $200 per day fine beginning on day 15; and a $400 per day fine beginning on day 31 and continuing until Defendants [had] complied fully with the Consent Decree and with the terms of [the Contempt Order]."  (*Id.* at 23.)  The purpose of the graduated fines was to "ensur[e]" Defendants' compliance with the Contempt Order, including payment of the attorneys' fees and costs assessed and imposed therein.  (*See id*. at 20 ("[T]he Court believes that a monetary penalty will be the most effective tool in ensuring Defendants' hitherto elusive compliance with the Court's orders.  Accordingly, the Court uses its

'broad discretion,' *Paramedics* [*Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 658 (2d Cir. 2004)], to implement 'a modest but increasing daily coercive fine' upon Defendants, *Scalia v. Cty. Serv. Transportation Inc.*, No. 20-MC-32 (LJV) (JJM), 2021 WL 776981, at *2 (W.D.N.Y. Mar. 1, 2021)."].) Finally, the Court ordered Defendants "to file updates on their compliance with the Consent Decree and [the Contempt] Order every fourteen (14) days until they have completely complied." (*Id.* at 23.)

### III. Defendants' Failure to Comply with the Consent Decree and the Contempt Order

Defendants did not pay the attorneys' fees. They also failed to pay the graduated fines for noncompliance. Nor did they file compliance updates. On June 4, 2021, the Court noted that "Defendants ha[d] not filed the required first update," and "warn[ed] Defendants that failure to comply with another of the 14-day deadlines may result in sanctions being imposed on counsel for Defendants." (*See* 6/4/2021 Docket Order.) Treating this as one missed deadline, it was defense counsel's and/or Defendants' third missed deadline in this case.

Defense counsel belatedly sought an extension. Although the Court granted the request, it "reject[ed] defense counsel Sergei Orel's excuse for failing to comply with the Court's 5/14/2021 [Contempt] [O]rder, namely, that there was a change in, and confusion about, Defendants' legal representation." (6/7/2021 Docket Order.) The Court explained that, "[f]irst, Attorney Orel noticed his appearance as Defendants' counsel in February 2019"; "[s]econd, Attorney Orel is the only attorney who has appeared on Defendants' behalf, both in written submissions and in court, in connection with Plaintiff's contempt motion"; "[t]hird, as a result of Attorney Orel's inappropriate conduct during the video hearing on 3/9/2021, he personally has been the subject of numerous court directives and orders since the hearing, such that there could not have been any confusion about his role as Defendants' counsel in this matter"; and "[f]ourth, even if there has been confusion or uncertainty regarding Attorney Orel's representation of Defendants, that in no

5

way excuses Attorney Orel, who is Defendants' attorney of record and has represented himself as such before the Court, from adhering to the Court's [Contempt] Order." (*Id.* (record citations omitted).)

### IV. Defendants' Motion for Reconsideration

On June 7, 2021, almost a month after the Court entered the Contempt Order, and during which time Defendants failed to comply, Orel filed a "Declaration [regarding the Court's] Order on Motion for Contempt," in which he asserted that the Court's "ordered attorneys [sic] fees of $17,500.38 are entirely excessive and Defendants disagree with such ruling by Your Honor." (*See* Dkt. 63, at 2.) On June 15, 2021, the Court held a hearing and "noted that, to date, Defendants ha[d] failed to comply with the [Contempt Order]." (6/15/2021 Minute Entry.) Nevertheless, the Court granted Defendants until June 29, 2021 to file a motion for reconsideration of the attorneys' fees award. It also "instructed Defendants to include in that motion any argument as to whether the graduated fees for noncompliance, outlined in the [Contempt Order], should apply during the time period between the 5/14/2021 [Contempt Order] and the 6/15/2021 hearing." (*Id.*) Finally, it reminded Defendants and defense counsel "to file a compliance update, as outlined in the [Contempt Order], by 6/29/2021." (6/15/2021 Minute Entry.)

Orel failed to file the reconsideration motion by the deadline. This was defense counsel's and/or Defendants' fourth missed deadline in this case. The day *after* the deadline, Orel sought an extension, in violation of the Court's Individual Practices and Rules, which require extension requests to be made "at least two working days" before the deadline. (Individual Practices and Rules, Rule 1G.) He made the excuse that, for *one* of the two weeks the Court gave him to prepare the papers, he was busy "with another [case]." (Letter to the Court by Sergei Orel, Dkt. 67, at 1.) He failed to explain why he could not have prepared the motion for reconsideration during the other week or why he did not move for an extension sooner.

6

Orel also failed to file a required compliance update by the June 29, 2021 deadline. This was defense counsel's and/or Defendants' fifth missed deadline in this case.

On July 1, 2021, Orel filed a compliance report and a motion for reconsideration of the Court's award of attorneys' fees. The motion for reconsideration of the attorneys' fees award was three pages, did "not mention, let alone [rely] on, any Federal Rule of Civil Procedure or local rule," and, in fact, "cite[d] no law whatsoever." (Reconsideration Order, Dkt. 71, at 4, 6–7 n.4.)

On July 21, 2021, the Court denied Defendants' belated motion for reconsideration, in part because Defendants' arguments had "nothing to do with the May 14, 2021 award of attorneys' fees" Defendants asked the Court to reconsider, and otherwise "defie[d] logic." (*Id.* at 5.) The Court again admonished Orel for his "borderline sanctionable" behavior throughout this litigation, including "personally fail[ing] to comply with Court directives and deadlines." (*Id.* at 6–7 n.4 (quoting 6/30/2021 Docket Order).) The Court also reminded Defendants and defense counsel that the Contempt Order required Defendants to pay attorneys' fees, so, having failed to pay the fees (among other things), they were still noncompliant. "Given that Defendants indicated that they wished to move for reconsideration of the attorneys' fees award on June 7, 2021, however, the Court exclude[d] from the graduated fines calculation the days between that date and the date of [the Reconsideration] Order," *i.e.*, July 21, 2021. (*Id.* at 8.) Thus, on July 21, 2021, the Court directed Defendants "to comply with the Consent Decree, the Contempt Order, and the terms of [the Reconsideration] Order immediately, including, by close of business on July 22, 2021,[2] paying the Clerk of the Court the accrued graduated fines of $3,200." (*Id.* at 9.)

---

[2] Though the Court gave Defendants only a day to comply and, among other things, pay Plaintiff the overdue attorneys' fees, Defendants had been on notice of their obligations since the Contempt Order on May 14, 2021.

7

## V.    Defendants' Failure to Comply with the Consent Decree, the Contempt Order, and the Reconsideration Order

Two and a half weeks passed. Defendants did nothing. They failed to comply with the Court's order to pay attorneys' fees. They failed to comply with the Court's order to pay graduated fines for noncompliance. They failed to comply with the Court's order to file compliance updates every 14 days. Even treating this as one missed deadline, it was defense counsel's and/or Defendants' sixth missed deadline in this case.

On August 9, 2021, almost three months from the date the Court issued the Contempt Order, the Court entered the following Docket Order:

> On 5/14/2021, the Court ordered Defendants to, among other things, pay attorney's fees and costs of $17,500.38, and file updates every 14 days until they had fully complied with the Consent Decree and the Court's Order. First, Defendants have not complied with the Court's directive to file compliance updates every 14 days; instead Defendants have filed only two. Second, it appears that Defendants have not complied with the Court's directive to pay Plaintiff's attorney's fees. None of Defendants' updates indicates that they have done so, and Plaintiff's 7/28/2021 letter indicates, among other things, that Defendants have not paid the required attorney's fees. Accordingly, Defendants are ordered to submit a compliance update by 8/13/2021, including a chart of their payments of the required graduated fines to the Clerk of Court. Defendants also are ordered to show cause, by 8/16/2021, why they should not be sanctioned for failure to comply with the Court's orders. Failure to comply with this order in all respects could result in a finding [of] **criminal contempt** against Defendants. Defense counsel shall serve a copy of this docket order on Defendants and file proof of service by 8/12/2021. . . .

(8/9/2021 Docket Order.)

Orel failed to comply with this order. He failed to file proof of service of the order on his clients by Thursday, August 12, 2021. Defendants failed to file any of the required documents by Friday, August 13, 2021. Treating this as one missed deadline, it was defense counsel's and/or Defendants' seventh missed deadline in this case.

Rather than hold Orel's failure to abide by Court orders against his clients, the Court "presume[d] that Defendants' failure to file a compliance report by the deadline [was] due to

8

defense counsel's failure to comply with the Court's order to serve his clients with the Court's 8/9/2021 docket order." (8/15/2021 Docket Order.) Instead of sanctioning Orel immediately after his failure to comply by the August 12, 2021 deadline (a Thursday), the Court allowed Orel all of Friday, August 13, 2021, to respond. Having received nothing by the weekend, the Court then directed Orel to "file the required proof of service by 8/16/2021, and, in addition, [to] show cause why [he] should not be sanctioned $500 for failure to comply with yet another court order." (*Id.*)

## DISCUSSION

This brings the Court to Orel's latest motion, styled "a motion to alter the Court's Order of July 21, 2021" (*see* Dkt. 74, at 1), purportedly filed in response to the Court's August 15, 2021 Docket Order directing Orel to "show cause why [he] should not be sanctioned $500 for failure to comply with yet another court order" (8/15/21 Docket Order).³ However, instead of complying with that directive, Orel asks the Court to *reconsider* the Reconsideration Order, which denied Defendants' belated, three-page motion for reconsideration of the Court's May 14, 2021 finding of contempt. (*See* Dkt. 71.)

Orel asserts:

[I]t continues to be the position of the Defendants' [sic] that the Court's Orders of May 14, 2021, and now of July 21, 2021, awarding Plaintiff's attorneys [sic] fees and daily fines have been incorrectly imposed by the Court, with Defendants' [sic] having complied with rebranding in February 2021 and June 16, 2021, as per the numerous submissions of the Defendants to this Court to that effect, and which awards are excessive and unfair to the Defendants.

(Dkt. 74, at 2.)

---

³ Although Defendants filed a notice of appeal of the Reconsideration Order after Orel filed his "Motion to Alter Judgment" (*see* Dkt. 76), the Court retains residual jurisdiction over the collateral show-cause and sanctions issues "notwithstanding [the] pending appeal." *See Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004).

9

Despite the plain unresponsiveness of these assertions to the show-cause order, the Court pauses to address them. As the unduly lengthy docket for this case now reflects, the Court has rejected Orel's and Defendants' position on this issue twice before. It rejected this argument first on May 14, 2021, when it found that Defendants had breached the Consent Decree, which entitled Plaintiff to be "compensate[d] . . . for all attorneys' fees Plaintiff [incurred] in enforcing the Consent Decree." (Contempt Order, Dkt. 60, at 21 (alterations omitted) (quoting Consent Decree, Dkt. 42, at ECF 4).) And the Court rejected this exact argument a second time when Defendants belatedly moved for reconsideration of the award of attorneys' fees. (Reconsideration Order, Dkt. 71, at 5–6.) Defendants thus have been obligated by court order to pay attorneys' fees for over three months. Orel's "position" that the Court's orders were "incorrect[]," —an audacious and untenable stance in light of Defendants' three-page reconsideration motion that "cite[d] no law whatsoever" (Reconsideration Order, Dkt. 71, at 6–7 n.4)—does not absolve Defendants of their obligation to comply.

In his latest "Motion to Alter Judgment," Orel also notes that "it has been the position of the Defendants that they have indeed fully complied with the terms of the May 14, 2021 order in terms of re-branding of the stores." (Dkt. 74, at 1.) Defense counsel further asserts that "it continues to be Defendants' position that no daily fines should have been imposed on the Defendants, since the Defendants have complied with the Consent Decree and the Contempt Order by February 21, and with the May 14 and June 15, 2021, Orders of the Court - by June 16, 2021, respectively." (*Id.* at 2.)

The Court does not care that Defendants continue to hold these positions; they have been rejected more than once and ought not to have been raised again. The repetition of these twice-rejected arguments is inexplicable, grossly unprofessional, and disrespectful to the Court and

Plaintiff. Again, the May 14, 2021 Contempt Order rejected the argument that Defendants had complied with the Consent Decree by February of 2021. (*See* Contempt Order, Dkt. 60, at 11–12.) And the Court rejected that argument a second time when Defendants moved to reconsider the Contempt Order. (*See* Reconsideration Order, Dkt. 71, at 6 ("Defendants argue that they 'have rebranded as of February 25, 2021[4] and that Plaintiff's motion for contempt in that respect was moot.' But the Court already rejected this argument when it found that Defendants were not in compliance with the Consent Decree, and Defendants point to no controlling decisions or data that the court overlooked." (citations, quotations, and alterations omitted)).) Orel's blatant rehashing of previously rejected arguments excuses neither his nor Defendants' continued noncompliance.

Further, as Orel still seems unable to grasp, the Contempt Order on May 14, 2021 required Defendants to pay attorneys' fees and to pay graduated fines until they had fully complied, *including by paying the attorneys' fees*. (*See* Contempt Order, Dkt. 60, at 23 (ordering Defendants to, among other things, pay "Plaintiff attorneys' fees and costs in the amount of $17,500.38" and "pay [] graduated fees to the Clerk of Court . . . until Defendants have complied fully with the Consent Decree *and with the terms of this Memorandum and Order*" (emphasis added)); *see also* Reconsideration Order, Dkt. 71, at 7–8 ("As noted, the Contempt Order directed Defendants to, among other things, pay attorneys' fees. It also directed them to pay the specified graduated fines 'until they had complied fully with the Consent Decree *and with the terms of the Contempt Order*.'" (citations and brackets omitted)).)

Only after devoting the bulk of his filing to rehashing previously rejected arguments does Orel turn to responding to the Court's directive to "show cause why [he] should not be sanctioned

---

[4] Apparently, the argument has changed insofar as Defendants now claim an even earlier date of compliance: February *21*, 2021.

$500 for failure to comply with yet another court order." (8/15/2021 Docket Order.) Orel appears to contend that he missed the email alerting him to the Court's August 9, 2021 order because it arrived a day after he had returned from an overseas vacation. (Dkt. 74 at 2.) He writes:

> The undersigned attorney for the Defendants was not initially aware at all of the Court's Order dated August 9, 2021, not until this morning of August 16, 2021, when the undersigned checked the incoming email for the weekend, and saw to his surprise an Order from this past Sunday August 15, 2021,[5] which required a service of the October 9 [sic], 2021, order on the Defendants. The undersigned was on a family vacation out of the country from July 29 until August 8, 2021 inclusive, when the undersigned flew into New Jersey late at night on August 8, 2021, and did not appear at work until August 9 in the afternoon, but the undersigned missed the Court's August 9, 2021 filing that occurred after hours, i.e., 18:04 PM [sic] EDT.

(*Id.*)

This purported explanation for why Orel failed to comply with the Court's August 9, 2021 order is patently insufficient. That Orel was on vacation through August 8, 2021 fails to explain or justify why he did not see or comply with the Court's August 9, 2021 order—issued a day after his return—before August 16, 2021. And even if Orel had been away when the August 9, 2021 order was issued (which he was not), he has used his travel as an excuse too many times to be believed or exonerated. (*See* Dkt. 48, at 2 (arguing that he should be excused for failing to "submit a timely opposition to the Plaintiff's motion" because he was out of the country on business); 2/1/2021 Docket Order (rejecting Orel's business-travel explanation: "The fact that defense counsel was on [an] international business trip the last few days—which the Court assumes was a

---

[5] Orel has the audacity to suggest that the Court is to blame for his failure to comply with the Court's August 9, 2021 docket order by issuing its show cause order on a Sunday (August 15, 2021). (Dkt. 74 at 3 (remarking that he "now understands that this Court issues Orders even on Sundays," and promising "to check his email daily religiously going forward").) Not only is this suggestion galling, it is a nonsensical effort to deflect responsibility. That the Court issued its show cause order on a Sunday (August 15, 2021) in no way relates to why or how Orel completely missed the Court's August 9, 2021 order, issued six days earlier, on a Monday.

planned trip—in no way excuses his failure to comply with the extended filing deadline[.]"); Dkt 37, at 6 (letter from defense counsel to the Court explaining that "the undersigned attorney, while traveling, did not see the email counsel for plaintiff had sent").) Further, even if Orel had been away when the Court's August 9, 2021 order (or any other order) was issued, it was his professional and ethical obligation to arrange for his cases to be monitored and addressed in his absence, including requesting extensions as necessary. Having repeatedly and utterly failed to take these minimal measures in this case, he can no longer rely on travel as an excuse for his noncompliance with the Court's orders and deadlines.

Perhaps if this were the first time Orel had failed to comply with a Court order, the Court could overlook it. But this is one in a series of Orel's "personal[] fail[ures] to comply with Court directives and deadlines throughout this litigation." (*See* 6/30/2021, 12:07 PM Docket Order ("The Court notes that defense counsel Sergei Orel's excuse for missing the deadline, that he 'has been engaged for the whole of last week,' is not an emergency. The Court also notes that Attorney Orel has personally failed to comply with Court directives and deadlines throughout this litigation."); 6/30/2021, 5:59 PM Docket Order ("Defendants filed the motion for extension not only after the deadline had already passed, but not until the Court had ordered Defendants to show cause why they should not be sanctioned for failure to comply with the deadline."); 6/4/2021 Docket Order (noting, after Defendants missed a compliance-update deadline, that "failure to comply with another of the 14-day deadlines may result in sanctions being imposed on counsel for Defendants"); 4/27/2021 Docket Order ("The Court notes that Attorney Orel has failed to comply with th[e] deadline" to "show cause why he should not be sanctioned for having knowingly misrepresented in his Notice of Appearance that he is admitted or authorized to practice in this court in this matter, and why he should not be barred from representing Defendants in this

matter."); *see also* 3/9/21 Minute Entry; 3/26/21 Docket Order (documenting Orel's disruptive, disrespectful, and bizarre behavior directed at both the Court and Plaintiff, including "[h]is use of ad hominem insults and rude sounds, among other things," which necessitated muting and eventually ejecting Orel from the video contempt hearing).)[6] Thus, the Court rejects Orel's argument that sanctioning him would be "unfair, harsh, and undeserved" (Dkt. 74, at 2), and fines him $500 dollars for his personal noncompliance with yet another Court order.

Finally, Orel requests that the Court "allow the Defendants to pay the attorneys [sic] fees, to the Plaintiff in several installments, for example, in 10 installments of $1,750.04 each over the course of the next 10 months." (Dkt. 74, at 2.) Invoking Defendants' argument that Plaintiff should have "reach[ed] out to the Defendants to solve the issue [of their failure to rebrand] outside of court, instead of abusing the judicial process and the court's resources" (Dkt. 70, at 2), the Court directs Defendants to "reach out" to *Plaintiff* about their proposed installment plan, and denies Defendants' request to allow them to pay in installments. Perhaps the proposed installment plan would benefit all parties involved, but the onus is on Defendants (who have neither paid the court-ordered attorneys' fees nor proposed an installment plan in the three months since the Court's order) to arrange such a schedule with Plaintiff, should Plaintiff agree.

Defendants are reminded that, as indicated below, graduated fines have continued to accumulate. To facilitate negotiation of the payment of attorneys' fees, however, the Court stays the accumulation of graduated fines from the date of defense counsel's latest motion (August 16, 2021), through two weeks after the date of this Memorandum and Order, *i.e.*, September 14, 2021.

---

[6] And, as discussed, this is at least the seventh instance of noncompliance by Orel and/or his clients, the latter of which the Court presumes is partly due to Orel failing to notify Defendants of the Court's decisions and orders.

## CONCLUSION

Counsel for Defendants, Sergei Orel, is fined $500 for failure to comply with yet another Court order. Defense counsel shall make that payment to the Clerk of Court by September 14, 2021. Defendants are ordered to continue filing compliance updates every 14 days, starting on September 14, 2021, until they have paid the attorneys' fees ordered in the May 14, 2021 Contempt Order and all accumulated fines. Defendants also are ordered to show cause, by September 14, 2021, why they should not be sanctioned for failure to pay the attorneys' fees and graduated fines for the time since they were ordered to do so on May 14, 2021. As should be clear, the Court will not accept as sufficient cause the argument, which has now been thrice rejected, that Defendants object to those requirements. Defendants are further required to pay the overdue graduated fines accrued before August 16, 2021 (which now total $12,000[7]), and those that accrue beginning two weeks after the date of this Memorandum and Order, *i.e.*, after September 14, 2021. Defense counsel is directed to serve a copy of this Memorandum and Order, and the docket for this case, on Defendants, and to file proof of service, by September 3, 2021. Failure to comply with this Memorandum and Order in all respects may result in a finding of **criminal contempt** against Defendants and/or defense counsel Sergei Orel.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 30, 2021
      Brooklyn, New York

SO ORDERED.

---

[7] In the Reconsideration Order, the Court noted that the current fines totaled $3,200, would continue at a rate of $200 per day from July 22, 2021 through July 27, 2021, and increase to $400 per day thereafter. (*See* Reconsideration Order, Dkt. 71, at 8.) Given that the rate was $200 per day from July 22, 2021 through July 27, 2021 (for a total of 6 days and $1,200) and was $400 per day from July 28, 2021 through August 15, 2021 (for a total of 19 days and $7,600), and considering that Defendants owed $3,200 hundred already, the total is $12,000.